**UNITED STATES of America,**
**Appellee,**
**v.**
**Wilson SIMON, Appellant.**
**No. 71–1226.**

United States Court of Appeals,
Eighth Circuit.
Nov. 30, 1971.

Patrick Delaney, Robins, Meshbesher, Singer & Spence, by Ronald I. Meshbesher, Minneapolis, Minn., for appellant.

Neal Shapiro, Asst. U. S. Atty., Robert G. Renner, U. S. Atty., D. Minn., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant, Wilson Simon, appeals from his conviction upon a verdict of guilty after jury trial of Count I which charged the offense of selling approximately 70.8 grams of cocaine on September 5, 1971, in violation of Title 26 U.S. C. § 4705(a). Appellant was acquitted on Count II which charged illegal possession of depressant and stimulant

drugs on July 13, 1970 in violation of Title 21 U.S.C. § 321(v). His assertion of error will be taken up seriatum.

Appellant claims grounds for reversal as follows. (1) Improper joinder of offenses and prejudicial error in refusing to sever offenses for trial; (2) as a matter of law, defendant was merely a procuring agent; (3) entrapment as a matter of law; (4) erroneous instruction as to entrapment; (5) error in denying his motion for mistrial upon elicitation by the prosecutor of evidence of a drug sale not charged. We have discussed in detail many of the problems here raised in another case which is filed this date and we will, therefore, limit our discussion, where applicable, by reference thereto. See, United States v. Raymond Brown and Steven Liley, 453 F.2d 101 (8 Cir., No. 71–1105 November 30, 1971) (hereinafter referred to as *Brown*).[1] A brief resume of the facts will be helpful to a discussion of the errors claimed.

This case began on July 20, 1970, when Special Agent Edgar Muhlhauser and John Walsh and informant Thomas Liley accidentally met defendant, Wilson Simon, at the Minneapolis-St. Paul International Airport. Informant Liley introduced Simon to agents Walsh and Muhlhauser who were posing as underworld characters under the names of Jim O'Neil and Eddy. Informant told Simon that they were bookies with drugs as a sideline. During the flight to California Simon told the agents he could obtain better cocaine than they allegedly were going to purchase in California from a person identified as "Frenchie." Simon also volunteered he could supply heroin or hashish if they were interested, and further, that he had recently lost a whole load of amphetamines and barbiturates which "were busted by federal agents at Crystal Airport in Minneapolis."[2] The next contact between the parties occurred on September 4, 1970 at the Colonial Pancake House in Minneapolis when defendant Simon met with Agent Muhlhauser and informant Liley. During that visit Simon offered to sell Muhlhauser cocaine at $700 an ounce, which "would be five times better than the cocaine that I got from Frenchie."[3] Tentative arrangements were made for a sale of 8 ounces of cocaine at $700 an ounce which Simon was unable to deliver on that date. The next day Agents Muhlhauser and Walsh met with Simon, drove to the airport where they met a female identified as "Psychedelic Sue" who handed some packages to Simon, one of which Simon indicated was cocaine. After some discussion the parties drove to defendant's house where Simon weighed the package and determined that there was approximately two and one-half ounces of cocaine, for which Agent Walsh paid Simon $1800. This is the transaction charged in Count I of the indictment upon which defendant Simon was found guilty. No further sales of cocaine are charged, however, on September 28, 1970, defendant sold Agents Muhlhauser and Walsh three ounces of what was reputedly cocaine but turned out to be procaine and corn starch.

Appellant initially claims that Counts I and II were improperly joined and that it was prejudicial error to deny his motion to sever the alleged offenses for trial. Rule 8(a) of the Federal Rules of Criminal Procedure provides:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the

---

1. United States District Judge Earl R. Larson presided in both cases and in general gave substantially similar instructions including the instruction on "entrapment" and "procuring agent". The instant cause was tried in February 1971 and *Brown* was tried in December 1970.

2. This seizure by Government agents took place on July 13, 1970 and was the subject of Count II of the instant indictment upon which the jury returned a verdict of not guilty.

3. Part of testimony of Agent Muhlhauser.

offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder of offenses is ordinarily appropriate where as in this case the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps. United States v. Mc-Kuin, 434 F.2d 391, 396 (8 Cir. 1970); Johnson v. United States, 356 F.2d 680, 682 (8 Cir. 1962). The instant indictment involves similar offenses, the illegal possession and sale of drugs. United States v. Adams, 434 F.2d 756 (2 Cir. 1970); United States v. Rivera, 348 F.2d 148 (2 Cir. 1965). Furthermore, it is well settled that the trial court has a wide range of discretion in granting separate trials on different offenses. United States v. Skillman, 442 F.2d 542, 554 (8 Cir. 1971). In brief we note that in the initial meeting between defendant Simon and the Government agents on July 20, 1970, Simon made statements material to the offenses charged in both counts. We are satisfied the offenses were properly joined and that there was no abuse of discretion in refusing to sever for trial.

■ Appellant secondly contends that, as a matter of law, he acted merely as a procuring agent and thus did not sell within the meaning of the statute. In this connection he urges that the evidence established that he arranged to secure the cocaine for the Government agents from a woman he met at the airport and gave to the woman courier the $1800 furnished by the purchasers. Thus he claims that it was not shown that he was a seller of drugs as charged. To the contrary, however, the evidence shows defendant was an active dealer in narcotics and prior to the sale in question boasted of his ability to furnish various types of drugs in substantial quantities, and he did deliver a large

amount of cocaine on short notice. There is ample evidence from which the jury could find defendant was an experienced dealer in narcotics and that he made the sale as charged. This issue was submitted to the jury under proper instructions. Appellant's contention is without merit.

■ Appellant's next contention, that he was entrapped as a matter of law, is equally devoid of merit. The evidence shows defendant was eager to replace "Frenchie" as a source of supply for any drugs the Government agents were disposed to purchase. There is no question but what defendant was a willing seller. He was not induced, coerced, or enticed into committing the wrongdoing charged. The agents did no more than afford the defendant an opportunity to commit the crime. The issue of entrapment was submitted to the jury under proper instructions. The instructions given were substantially the same as those given in *Brown, supra*. We are satisfied that there was no error in this regard.

This leads us to appellant's final claim of error, that the trial court erred in denying his motion for mistrial upon the grounds that undue prejudice was created by the attempt of Government counsel to introduce evidence of another drug sale and that counsel's persistence in pursuing this line of inquiry, after the court had sustained defendant's objection, compounded the error. On direct examination by the prosecutor, informant Liley testified that he had first met defendant in June 1970 at a Rock Festival in Stevens Point, Wisconsin. The following inquiry then took place:

"Q  Did you talk to Mr. Simon?

A  He was busy.  I said 'hello' and that was it.

Q  Did you see what Mr. Simon was doing?

A  Yes.

Q  What was he doing?

A  Selling drugs out of the window of the bus.

MR. THOMSON: Objected to as conclusion and move the question and answer be stricken and the jury be instructed to disregard that. There is no basis for that statement.

THE COURT: The answer will be stricken and the jury will disregard it. By Mr. Shapiro: .

Q Did you see Mr. (Simon) in the bus?

A Yes.

Q Did you have conversation with him?

A   Just introduced to him.

Q Did you see what Mr. Simon was doing?

A Yes.

Q Could you describe what Mr. Simon was doing?

A Yes. The Dodge bus has a window on the side and he had a knife out and a little plastic bag and was taking five of these mini amphetamines out of a little sack.

Q Do you know for sure they were amphetamines?

A Yes. I have seen them on many occasions.

Q What was he doing with those?

A Selling them out the window, five for a dollar.

MR. THOMSON: I move for mistrial and I would like to be heard on it."

After hearing the arguments of counsel out of the presence of the jury, the trial court denied the motion for mistrial but instructed the jury to disregard this testimony.

Initially it would be observed that the objection and motion to strike were made on the basis that the statement of the witness was a conclusion. It cannot therefore be said that the prosecutor persisted in compounding error when he sought to have the witness describe what occurred. Although the trial court instructed the jury to disregard the testimony it should be noted that in overruling defendant's motion for new trial after the verdict was returned, the trial court observed that in view of defendant's entrapment defense the sale of drugs by defendant in June at the Rock Festival was admissible to show predisposition. We agree. The defendant introduced the defense of entrapment through the cross-examination of the Government's first witness, Agent John E. Walsh. The evidence of similar activity then became admissible. See, *Brown, supra.* It is also noted that in response to defendant's motion for mistrial, the prosecutor stated for the record that counsel for the defendant indicated in chambers that he intended to tender the defense of entrapment or procuring agent. This was not denied. Once the defense has introduced the entrapment or procuring agent defense, the Government may proceed with relevant evidence to the contrary. To require the Government to wait until the defendant has rested before allowing it to rebut issues developed on cross-examination of the Government's witnesses in its case in chief might well deprive the Government from offering important relevant evidence. Porter v. United States, 394 F.2d 508 (5 Cir. 1968). We are satisfied the trial court properly denied defendant's motion for mistrial and for new trial.

The judgment of conviction is affirmed.