**Frank BUCKLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0014–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 28, 1982.

Discretionary Review Refused
June 2, 1982.

Foreman, DeGuerin & DeGuerin, and Lewis Dickson (on appeal only), Houston, for appellant.

Larry Urquhart, Asst. Dist. Atty., Houston, for appellee.

Before EVANS, C. J., and STILLEY and DOYLE, JJ.

DOYLE, Justice.

This is an appeal from a conviction for aggravated rape. The jury assessed appellant's punishment at sixty years confinement in the Texas Department of Corrections.

The evidence adduced at the trial showed that in the early morning hours of January 12, 1979, a fight erupted between the complainant's male friend and one John O'Daniel at the Steamboat Springs, a night club. During the fight the complainant lost her car keys. Appellant offered to drive her and her boyfriend home. After both had gotten into appellant's car, the boyfriend got out of the car, deciding to take one more look for the lost keys. Appellant then sped off with only the complainant as his passenger. The complainant testified that when she demanded to be let out and attempted to escape, she was beaten, threatened and choked, and forced to commit oral sodomy and sexual intercourse with appellant before finally being released at the apartment of a friend at 5:57 a. m. Appellant denied that he made sexual advances toward the complainant and specifically denied that he raped her.

Appellant's contentions on appeal are presented in fourteen grounds of error.

The relevant facts will be stated as each ground of error is discussed.

■ Appellant's ninth ground of error challenges the sufficiency of the evidence to sustain the conviction for aggravated rape under § 21.03(a)(2), Texas Penal Code. We will discuss this ground first. In pertinent part this section provides:

"(a) A person commits an offense if he commits rape as defined in Section 21.01 of this code or rape of a child as defined in Section 21.09 of this code and he:

"(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

"(2) compels submission to the rape by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.

A summary of the testimony of the complainant as to her treatment at the hands of the appellant, was that she had been struck on her head and face by the appellant after she had demanded to be released from his car prior to the raping incident. He told her "I'm going to get what I want." When appellant stopped at a convenience store, appellant told her he would kill her if she tried to escape from the car. Nevertheless, she attempted to get out, but was grabbed by the throat and choked by the appellant. Throughout the period that the appellant and the complainant were riding around, the threats to kill and the beatings continued. She testified, "Sir, he was slapping me, pulling my hair out, yanking me back and forth around the car, hitting me in the face." "Whatever he hit me with it was hard enough to knock my teeth out." Further, testimony showed that one of the complainant's teeth was knocked out and had to be replaced. Also during the events leading up to the rape, the complainant was forced to commit an act of sodomy with the appellant. The complainant stated that although the appellant at no time during the episode exhibited a gun, knife or other weapon, she feared that he would kill her with his bare hands. Just prior to going to the body shop where the rape occurred, the complainant

testified: "We drove some more and drove and he kept hitting me and threatening to kill me and telling . . . well, at any rate, we went to a body shop. He's been hitting me already for hours."

Appellant contends that absent the use of any deadly weapons, the verbal threats and relatively minor injuries are insufficient to sustain a conviction of "compelling submission to rape by threatening imminent infliction of serious bodily injury and death." Appellant relies principally on *Rucker v. State*, 599 S.W.2d 581 (Tex.Cr.App.1980) and *Rogers v. State*, 575 S.W.2d 555 (Tex. Cr.App.1979). In *Rogers* the court held that unless there was an expressed verbal threat, only in instances where a gun, knife or other deadly weapon was used, would there be sufficient proof to sustain aggravated rape. *Rucker*, citing and following *Rogers*, held that the evidence adduced was insufficient to show aggravated rape since there was no weapon, and no expressed verbal threat made to compel submission. The court further stated in *Rucker* that the injuries suffered by the complainant when struck by the appellant did not inflict serious bodily injuries as defined by the statute. V.T.C.A., Penal Code, Sec. 1.07(a)(7) and (34).

The facts before us are distinguishable. The testimony in our case shows both the requisite expressed verbal threat of death or serious bodily injury, coercing submission, and the actual infliction of serious bodily injury when the complainant sought to resist or flee. Appellant's ninth ground of error is overruled.

Grounds of error 1 through 3 complain that the trial court erred in allowing defense witnesses to be asked "have you heard" questions. We overrule these grounds. Appellant contends that these witnesses were character witnesses, not reputation witnesses, and that, as such, should not have been allowed to give answers relative to the appellant's reputation. These questions arose at the punishment hearing of the trial.

Without detailing the testimony, the witnesses Tummy Young, Charles E. O'Connor and Delilah Hughes, when called as character witnesses by the appellant, each testified that they knew the appellant "to be a peaceful law abiding citizen" and that he had not violated the laws of this state or any other state. Defense witness Hughes additionally testified when asked if she knew appellant's reputation as a law-abiding citizen: "As far as I know he's a very law-abiding citizen."

■ As a general rule, the State may ask a character witness on cross-examination if he has heard of a specific act of misconduct and if that act is inconsistent with or contrary to the character traits testified to by the witness. *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972). On the other hand, as pointed out in *Ward v. State*, 591 S.W.2d 810 (Tex.Cr.App.1978), ". . ., there is no reasonable basis for asking have you heard questions of a witness who testifies to his personal opinion of someone's character, as opposed to the reputation of that person's character." Applying the rationale of *Brown* and *Ward*, we first examine the testimony of Delilah Hughes, who stated, without objection, when questioned by the defense:

Q. Is he a law-abiding person?

A. Yes, sir, he certainly is.

Q. Do you know Mr. Buckley's reputation as a law-abiding citizen?

A. As far as I know, he's a very law-abiding citizen.

\* \* \* \* \* \*

In response to questioning by the State, Hughes answered:

Q. Have you ever heard that he was convicted of theft, felony offense, for stealing governmental property?

A. Yes sir, I sure have.

Q. And who told you that, ma'am?

A. Frank himself.

The foregoing testimony is typical of the questions and responses of the witness O'Connor and Young. Each of them testified he knew of appellant's felony conviction of Florida in 1972. Nevertheless, each had first testified that appellant's reputation for being peaceful and law-abiding was

good. Such testimony gave the impression that the appellant had good general character and had committed no crimes. Under such circumstances it was not improper for the State to propound "have you heard" questions involving those specific character traits of being peaceful and law-abiding. *Trippell v. State*, 535 S.W.2d 178 (Tex.Cr.App.1976); *Livingston v. State*, 589 S.W.2d 395 (Tex.Cr.App.1979).

■ Appellant's fourth and fifth grounds of error complain of the trial court's admission into evidence of a State's exhibit consisting of a Houston Police Department supplemental offense report, an evidence submission slip and a rape kit workup sheet. This exhibit was submitted by the State under the Texas Business Record Act, Article 3737e, V.A.C.S. (1973). Before the trial court, the appellant contended that the exhibit was hearsay as to one Peter Christian, Jr. of the Houston Police Department, through whom the State sought to introduce it, and hence was inadmissible. Appellant tendered the further argument that no proper predicate had been made for admission of the exhibit under art. 3737e and that although the State later called J. R. Daniels, who actually conducted the evidence analysis contained in the exhibit, the error in admitting the exhibit was not cured. *Kistler v. State*, 591 S.W.2d 836 (Tex.Cr.App.1980); *United States v. Brown*, 451 F.2d 1231 (5th Cir. 1971). So far as the record shows, appellant's objection was to the effect that Christian's testimony was based on hearsay and the objection was directed at the entire exhibit. While the State admits that certain portions of the exhibit were probably not admissible under the holdings of the *Coulter* and *Kistler* cases, there can be no doubt that other portions of the exhibit consisting of the supplemental offense report and rape workup sheet were admissible, for which the proper predicate had been laid as required by art. 3737e. *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979). If the contents of an exhibit are such that some portions, but not all, are inadmissible, it is incumbent upon the objecting party to identify and specify the exact portions of the exhibit sought to be excluded and state the grounds for such objection, if he wishes to preserve error. *Hernandez v. State*, 599 S.W.2d 614 (Tex.Cr.App.1980). Appellant's fourth and fifth grounds of error are overruled.

■ The appellant next complains, by grounds of error six, seven and eight, that the trial court erred in admitting the testimony of Ginger Childers because it constituted inadmissible hearsay. According to the record, after the complainant had been raped, she was taken to the apartment of Jeffrey Halseath, where the witness Childers and Jeffrey answered her knock on the door. In her testimony, Childers stated that "She was a mess. Her face was bloody. Her tooth was gone. Her hair was messed up. She was dirty." Childers further testified that the complainant looked as if she had been knocked in the dirt," that she was bruised and "She was sort of in shock." Childers further stated that she and Jeffrey were upset and proceeded to try "to take care of her and get her calmed down and get her to a hospital." The complainant also told Childers that she had been "raped by an animal" and was "glad she was alive." The appellant objected to this testimony as being hearsay. We do not agree. The statements were exceptions to the hearsay rule in that they were excited utterances limited to the bare facts concerning the rape and made as soon as complainant encountered someone following her release by appellant. There was no opportunity for reflection and premeditation. The trial court correctly admitted the Childers' testimony. *Hanner v. State*, 572 S.W.2d 702 (Tex.Cr.App.1978). We overrule grounds six through eight.

An examination of appellant's remaining five grounds of error presents no meritorious contentions and are overruled.

The judgment of the trial court is affirmed.